UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY D. HATCHER,<br><br>    Plaintiff-Appellant,<br><br>         v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant-Appellee. | 1:05-CV-0910 OWW<br><br>ORDER AFFIRMING THE JUDGMENT OF THE BANKRUPTCY COURT |

### I.   INTRODUCTION

Plaintiff Gary D. Hatcher, M.D. ("Dr. Hatcher" or "Appellant"), appeals the judgment of the bankruptcy court denying his request for discharge of his National Health Service Corps (NHSC) scholarship debt.

### II.   PROCEDURAL HISTORY

Dr. Hatcher filed the complaint in bankruptcy court on August 12, 2003.  Defendant United States of America ("Defendant") filed the answer on March 11, 2004.  Trial was conducted on March 31, 2004, and judgment entered on June 30, 2004.

### III.   BACKGROUND

**1**

The National Health Service Corps Scholarship Program, *see* 42 U.S.C. §§ 254d-254t, was enacted in 1976 to remedy the problem of maldistribution of health care professionals in the United States. *See* H.R.Rep. No. 266, 94th Cong., 2d Sess., pt. 1, 22 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4947, 4964. Under this program, students of medicine and related professions are granted scholarships but must enter into written agreements to provide one year of "obligated service" for each year of educational support (with a minimum service obligation of two years). 42 U.S.C. §§ 254l (f)-(g). This service must be performed "in a health professional shortage area (designated under [42 U.S.C. § 254e]) *to which [the scholar] is assigned by the Secretary* [of Health and Human Services]." 42 U.S.C. § 254l (f)(1)(B)(iv) (emphasis added). Each scholarship recipient must also agree in writing that, if he or she breaches this commitment, he or she will be liable for liquidated damages of three times the amount of scholarship support received, as well as interest. 42 U.S.C. § 254o(b)(1)(A).

Dr. Hatcher received $73,657 through the program to finance his medical education. Upon graduating from medical school in 1984, however, Dr. Hatcher refused to discharge his service obligation. In 1989, he was adjudicated to be in default, and judgment in the amount of $502,580.46 was entered against him in *United States v. Hatcher*, 716 F.Supp. 447 (S.D. Cal. 1989), *aff'd United States v. Hatcher*, 922 F.2d 1402 (9th Cir. 1991).

After the affirmance, Dr. Hatcher requested a placement with the NHSC in order to pay the judgment through service. He was assigned through the Bureau of Prisons to a correctional

facility in El Reno, Oklahoma, starting in August 1992.  In September 1995, Dr. Hatcher was fired for unprofessional conduct, having served all but eleven months remaining in his obligation. He was later allowed to resign.

Dr. Hatcher then sought placement at an Indian Health Service facility in Lawton, Oklahoma.  When he obtained the placement from the NHSC in 1996, however, he again refused to serve.

In 2003, Dr. Hatcher reopened his 1996 bankruptcy to bring an adversary proceeding seeking discharge of his NHSC debt, alleging that it is "unconscionable," within the meaning of Title 42, Section 254*o*(d)(3)(A), of the United States Code to require him to pay the remainder of the 1989 judgment despite his willingness to pay by service.  The bankruptcy court rejected this argument.

The court has jurisdiction under Title 28, Section 158(a)(1), of the United States Code.

### IV.   LEGAL STANDARD

The bankruptcy court's construction or interpretation of a statute is reviewed *de novo*.  *United States v. Shipsey*, 363 F.3d 962, 968 n.4 (9th Cir. 2004).  Mixed questions of law and fact are reviewed *de novo*.  *United States v. Asarco, Inc.*, 430 F.3d 972, 978 (9th Cir. 2005).  The bankruptcy court's findings of fact are reviewed for clear error. *Beck v. Pace Int'l Union*, 427 F.3d 668, 674 (9th Cir. 2005).

### V.   ANALYSIS

Title 42, Section 254*o*(d)(3)(A), of the United States Code provides:

**3**

> Any obligation of an individual under the Scholarship Program (or a contract thereunder) or the Loan Repayment Program (or a contract thereunder) for payment of damages may be released by a discharge in bankruptcy under Title 11 only if such discharge is granted after the expiration of the 7-year period beginning on the first date that payment of such damages is required, and only if the bankruptcy court finds that nondischarge of the obligation would be *unconscionable*.

42 U.S.C.A. § 254o(d)(3)(A) (emphasis added).

The statute does not define "unconscionable." *Matthews v. Pineo*, 19 F.3d 121, 124 (3rd Cir. 1994), *cert. denied* 513 U.S. 820 (1994).

> In ordinary usage, the term "unconscionable" means "excessive, exorbitant," "lying outside the limits of what is reasonable or acceptable," "shockingly unfair, harsh, or unjust," or "outrageous." Webster's Third New International Dictionary 2486 (1977). In the absence of contrary indications, we presume that Congress, in employing the term "unconscionable" in Section 254o(d)(3)(A), meant to adopt this definition. *See Smith v. United States*, 508 U.S. 223, ----, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

1 | *Matthews*, 19 F.3d at 124.

2 |     Dr. Hatcher argues that it would be unconscionable to
3 | require him to pay his remaining debt under the Program when he
4 | could discharge the debt with less than one year of service.  He
5 | concedes that he has no legal right to such placement, *see, e.g.*,
6 | *United States v. Fowler*, 659 F.Supp. 624 (N.D. Cal. 1987), *aff'd*
7 | 849 F.2d 1476 (9th Cir. 1988); 42 U.S.C. § 254o (upon breach,
8 | "the United States shall be entitled to recover from the
9 | individual [amounts due]"), but argues that equity requires that
10 | he be granted relief.  Nor does he seek equitable relief based on
11 | his inability to pay.  In particular, he seeks to justify his
12 | refusal to accept placement at the Lawton facility on the grounds
13 | that the NHSC only assigned him there after a delay of six
14 | months, during which time he moved with his family to California.

15 |     Dr. Hatcher's view of the bankruptcy court's equity powers
16 | is both expansive and erroneous.  "A court in equity may not do
17 | that which the law forbids.  Wherever the rights or the situation
18 | of parties are clearly defined and established by law, equity has
19 | no power to change or unsettle those rights or that situation,
20 | but in all such instances the maxim *equitas sequitur legem*
21 | [equity follows the law] is strictly applicable." *Petersen v.*
22 | *E.F. Johnson Co.*, 366 F.3d 676, 680 (8th Cir. 2004) (citations
23 | and internal quotation marks omitted); *accord East Tennessee*
24 | *Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004).  *See also*
25 | *In re Smart World Technologies, LLC*, 423 F.3d 166, 183-84 (2nd
26 | Cir. 2005) (bankruptcy court's equitable powers do not allow it
27 | to disregard specific provisions of the Bankruptcy Code); *In re*
28 | *Slater Health Center, Inc.*, 398 F.3d 98, 104 (1st Cir. 2005)

**5**

(bankruptcy court's equitable powers cannot be used so as to alter substantive rights defined under non-bankruptcy law).

Here, the parties' relative rights are clearly defined by statute. When Dr. Hatcher breached his agreement with the NHSC in 1984 by refusing to discharge his obligation by service, he forfeited his right to do so. To require the NHSC to place him would create a substantive right which the law does not recognize.

Furthermore, though Dr. Hatcher seeks equity, he has not done equity. *See In re Gardenhire*, 209 F.3d 1145, 1152 n.11 (9th Cir. 2000) (taking note of the "time-honored maxim" that "he who seeks equity must do equity") (*citing McQuiddy v. Ware*, 87 U.S. 14 (1873)). The bankruptcy court heard evidence that Dr. Hatcher earned approximately $1,180,000 between 1996 and 2002. During that same period, he paid only $104,754 toward his debt, of which more than $46,000 was collected through garnishment of his wages. In 1997, Dr. Hatcher earned in excess of $192,000, yet paid nothing on the debt. After refusing for a second time to serve, in 1996, his debt stood at approximately $239,000. Evidence was admitted to show that monthly payments totaling $30,000 per year would have retired this debt in fifteen years, leaving Dr. Hatcher and his family with an average of $138,000 on which to live. Dr. Hatcher has already been afforded two chances to retire his debt through service, one more than he was entitled to by law. The third time is not the charm.

## VI.  CONCLUSION

It is not "shockingly unfair, harsh, or unjust" to require Dr. Hatcher, who has already twice refused to fulfill his service

**6**

obligation, to discharge his debt by payment.  The bankruptcy court is AFFIRMED.

**SO ORDERED**

**DATED: January _31__, 2006.**

**/s/ OLIVER W. WANGER**
_____
**    OLIVER W. WANGER**
**United States District Judge**

7